## ASHUELOT SAVINGS BANK *v.* FROST.

*(Circuit Court, D. New Hampshire. 1884.)*

CONVEYANCE IN LIEU OF ATTACHMENT HELD NOT IN FRAUD OF CREDITORS.

   Where a bank levied an attachment upon lands owned by its treasurer who was under liabilities to it far exceeding in amount the value of the land, and in order to save the trouble of legal proceedings he made a deed of the land to the bank in lieu of the attachment, *held*, that creditors of his who afterwards attached the land could not avoid the conveyance to the bank.

At Law.

*Batchelder & Faulkner*, for plaintiff.

*A. S. Waite*, for defendant.

LOWELL, J. In this writ of entry the plaintiff corporation demands several parcels of land in the county of Cheshire and state of New

Hampshire, said to be worth about $10,000. The parties have waived trial by jury. The evidence is that Ellery Albee had been treasurer of the savings bank for many years, and in March, 1881, it was discovered that he had embezzled the money or property of the bank to an amount which was believed to be, and which has proved to be, not less than $80,000. March 16, 1881, he made to the bank a deed of the land in question in the usual form of an unconditional conveyance. The defendant was a creditor of Albee, and attached the lands after the deed had been made and recorded, and having obtained judgment caused them to be duly set off to him on the execution. The single question in this case is whether the deed to the bank was in fact a mortgage. It is agreed by counsel that the law of New Hampshire makes every deed which is given upon a secret condition voidable by the creditors of the grantor, however honest the transaction may be, and though the condition is merely a parol defeasance. *Coolidge* v. *Melvin*, 42 N. H. 510, and cases; *Winkley* v. *Hill*, 9 N. H. 31; *Ladd* v. *Wiggin*, 35 N. H. 421.

The grantor, Albee, testifies for the defendant by deposition: "I do not understand that there was any consideration, except that they were, as I understand, given as collateral security to secure my bondsmen." By "they" he means the deed; for, though there was but one, he had before testified that he did not remember how many there were. The deposition of this witness is not very satisfactory, because he remembers but little with any positiveness, and speaks of "impressions" chiefly. He further says that he did not know the amount of his indebtedness to the bank at the time, and that no valuation was agreed on at which the land was to be taken. On the other side, the evidence is that the bank had laid a first attachment on the land; that the amount of defalcation was approximately known, and far exceeded the value of the property; that Albee himself, knowing of the attachment, offered to give the deed to save the plaintiff bank the trouble and expense of legal proceedings; and that, accordingly, the deed was given and taken without any condition of any sort. If such was the transaction, the inference is that the deed was given, instead of the attachment, as a payment so far as it would go, for the debt. The plaintiff might be required to account in some form of action for the full value if Albee or his sureties should be ready to pay the remainder, but it would be as payment, and not as security, that the credit would be due.

I consider the plaintiff's case to be made out by a decided preponderance of the evidence. Verdict for the plaintiff.